UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN RAMIREZ,<br><br>    Petitioner,<br><br>    v.<br><br>CHRISTIAN PFEIFFER, Warden, Kern Valley State Prison,<br><br>    Respondent. | No. 1:13-cv-01203-AWI-SKO   HC<br><br>**FINDINGS AND RECOMMENDATION TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

    Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges four grounds for relief: (1) insufficient evidence to support his conviction on multiple counts of assault with a deadly weapon; (2) insufficient evidence to support his conviction of firing from a motor vehicle; (3) failure to instruct the jury that CALCRIM No. 370 does not apply to the gang enhancement; and (4) prosecutorial misconduct arising from violation of a court order concerning expert testimony.  Respondent counters that sufficient evidence supported the convictions in grounds one and two, and that grounds three and four were procedurally defaulted.  Having reviewed the record as a whole and applicable law, the undersigned recommends that the Court deny the petition.

///

I. **Factual Background**[1]

At about 4:00 p.m. on June 23, 2008, six gunshots were fired into the Valdovinos family's home at the corner of North Smith Road and Olive Avenue in Tipton, California. When the shots were fired, Raquel was in the kitchen cooking with her husband Jose and son Jesus. Raquel's daughter Maria was nursing her baby in the living room while Maria's daughter watched television. Maria's sons were in the backyard with their uncles, Max and Juan Carlos. Jesus' girlfriend, Salina, was in the garage, which had been converted to living space for her and Jesus.

Three or four shots were fired in rapid succession, then more shots were fired after a pause. Individual shots hit Juan Carlos' Camaro, Maria's minivan, and the garage door. At least one bullet was found lodged inside the garage near where Salina had been resting. Additional gunshots marked the front wall of the house. Later, Tulare County Sheriff's Deputy Bobby Saldana documented evidence of five bullet holes in the house and the vehicles parked in front of it. Saldana recovered no bullet casings.

After hearing the gunshots, Juan Carlos ran to the backyard fence and saw a red car driving east on Olive Avenue at high speed. Maria encountered smoke as she went out the front door to gather her children. The entire Valdovinos family was in the front yard by the time sheriff's officers arrived.

Detective Jesse Cox, who had just finished an investigative interview nearby, heard six gunshots as he returned to his car. As Cox got into his car, Deputy Javier Guerrero pulled up in a marked vehicle and told Cox that he had just seen a red four-door Honda Accord speeding away from the area where the shots were fired. Three Hispanic men with shaved heads were inside. As the driver (later identified as Petitioner Juan Ramirez) ran a stop sign, the back seat passenger (later identified as co-defendant Noel Ambriz) leaned out the window and yelled at the house on

---

[1] Factual background is derived from the opinion of the California Court of Appeal in *People v. Ambriz*, 2012 WL 1183973 (Cal. App. April 6, 2012) (No. F061579).

2

the corner of North Smith Street and Olive Avenue (the Valdovinos home).  Cox advised dispatch of the gunshots and went to the Valdovinos home.  Guerrero broadcast a description of the fleeing car and drove off to try to find it.

Meanwhile, three men in a reddish brown car matching Guerrero's broadcast description sped by Sheriff's Deputy Carl Bostai.  Bostai made a u-turn, activated his siren, and when the driver failed to stop, pursued the car.

As the car approached a residence on Road 136, it slowed down, and the passengers looked around.  Noel Ambriz looked at Deputy Bostai while the front seat passenger (later identified as co-defendant Marco Ambriz) threw an object out of the front passenger window.  Other deputies arrived and arrested Petitioner and Noel and Marco Ambriz.  Bostai put paper bags over the three suspects' hands to preserve any gunshot residue that might be present.  Subsequent tests of all three suspects were negative for gunshot residue.

Bostai searched the area where Marco Ambriz had thrown the object and found a .357 revolver in a pile of grass clippings.  Inside the cylinder were six spent casings and no live ammunition.  Law enforcement technicians dusted the gun but found no fingerprints on it.  Department of Justice records indicated that the gun was stolen.

Later that evening, Deputy Rodney Klassen interviewed Petitioner after he waived his *Miranda*[2] rights.  Petitioner admitted to being a Sureño gang member but denied having a gun or knowing anything about a shooting.  He said he was aware that something was thrown from the car window while sheriff's deputies were chasing him but denied knowing what had been thrown out.

///

///

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

After Marco Ambriz waived his *Miranda* rights, Marco[3] told Klassen that occupants of the Valdovinos house had shot one of his "homies" the week before. Marco acknowledged that Norteños "owned" all of North Smith Road and that Sureños would only go down that street to cause problems for Norteños. When Klassen asked Marco if he had a gun, Marco responded, "I don't know."

Police towed and impounded the Honda, which belonged to Petitioner's father. Testing the next day revealed gunshot residue on the outside of the front passenger door and the rear seat headliner.

Department of Justice Senior Criminologist Nancy McCombs, a forensic scientist, testified as an expert witness. She examined three bullet fragments, a bullet, and the .357 revolver that had been recovered in this case. Although McCombs was unable to determine whether the fragments had been fired from the revolver, she concluded that the bullet had been fired from it.

Max and Jesus Valdovinos associated with Norteño gang members. Max testified that Petitioner was a Sureño and that Norteños and Sureños were rivals. Max and Petitioner had a fistfight in September 2007. In February 2008, Max was involved in a fight at the local high school between Norteño and Sureño gang members that resulted in a student's stabbing. Max cooperated in the investigation of the fight.

Gang expert, Deputy Michael Yandell, testified about Norteños, Sureños, and their activities.

///

///

///

---

[3] In the interest of brevity, these findings will sometimes refer to Marco Ambriz and Noel Ambriz as Marco and Noel, respectively. No disrespect is intended.

4

## II. Procedural History

Petitioner and Marco and Noel[4] Ambriz were charged with (1) shooting at an inhabited dwelling (Cal. Penal Code § 246); (2) shooting from a motor vehicle (Cal. Penal Code § 12034(c)); (3-10) eight counts of assault with a firearm (Cal. Penal Code § 245(a)(2)); and (11) receipt of stolen property (Cal. Penal Code § 496(a)).  Alleged aggravating factors were that the crimes were committed for the benefit of a criminal street gang (Cal. Penal Code § 186.22(b)) and personal use of a firearm in the commission of the assault offenses.  In August 2010, the three defendants were tried before a jury in Tulare County Superior Court.  On August 31, 2010, the jury convicted all three defendants on all charges and found the gang enhancement to be true.  The jury did not reach an agreement on the enhancement for personal use of a firearm.

On November 23, 2010, the Superior Court sentenced all three defendants to a term of 15 years to life on count one, with a concurrent term for count 11.  The sentences for counts two through ten were stayed pursuant to Cal. Penal Code § 654.

Petitioner filed a direct appeal to the California Court of Appeal, which affirmed the judgment on April 6, 2012.  The California Supreme Court denied review on June 27, 2012.

On August 1, 2013, Petitioner filed a petition for writ of habeas corpus in this Court.

## III. Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which

///

---

[4] Although Noel Ambriz could be tried as an adult because he was over 14 years old, because of his youth, his case was briefly severed from that his codefendants. (On the date of the shooting, Marco Ambriz was at least 16 years old; Petitioner and Noel were older than 14 but younger than 16 years old.)  Ultimately, however, severance was reconsidered, and all three defendants were tried jointly.

applies to all petitions for writ of habeas corpus filed thereafter. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997). Under the statutory terms, the petition in this case is governed by AEDPA's provisions because Petitioner filed it after April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court. *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring). Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings. *Id.* Under AEDPA, a petitioner can prevail only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States." *Lockyer*, 538 U.S. at 71. To do so, the Court must look to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the

///

result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

**IV.    Due Process: Sufficiency of Facts to Support Convictions**

In the first two grounds for habeas relief, Petitioner alleges that his 14th Amendment right to due process was violated because the facts adduced at trial were not sufficient to convict him of (1) multiple counts of assault with a deadly weapon or (2) firing from a motor vehicle. Respondent disagrees.

**A.    Standard of Review**

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319;

///

*Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

### B. Assault with a Deadly Weapon

#### 1. Statutory Basis

Petitioner was convicted of eight counts of assault with a firearm in violation of California Penal Code § 245(a)(2). The statute provides:

> Any person who commits an assault upon the person of another with a firearm shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not less than six months and not exceeding one year, or by both a fine not exceeding ten thousand dollars ($10,000) and imprisonment.

Cal. Penal Code § 245(a)(2).

"Assault with a deadly weapon is nothing more than an assault where there is used either a deadly weapon or any means of force likely to produce 'great' bodily injury." *People v. Carmen*, 36 Cal.2d 768, 775 (1951). In California, "all that is required to sustain a conviction of assault with a deadly weapon is proof that there was an assault, that it was with a deadly weapon, and that the defendant intended to commit a violent injury on another." *People v. Birch*, 3 Cal.App.3d 167, 177 (1969).

#### 2. State Court Opinion[5]

In their direct appeal, Petitioner and his co-defendants argued that the evidence was insufficient to support the multiple assault convictions because (1) no evidence established that they had knowledge of all the occupants on the house at the time of the shooting, (2) the gun was

///

---

[5] Because the California Supreme Court summarily denied review, the Court must "look through" the summary denial to the last reasoned decision, which is, in this case, the opinion of the California Court of Appeal, Fifth Appellate District. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-06 (1991).

8

not powerful enough to penetrate the house's walls, and (3) the gun held only six bullets. "In essence, they [contended] that they had to have specific knowledge of the presence of all the occupants in the house and the present ability to inflict injury on all eight occupants in order to sustain the convictions." *Ambriz*, 2012 WL 1183973 at *5-*6.

The state court rejected Petitioner's challenge to his convictions for assault with a deadly weapon. The court relied on the elements of the crime set forth in the relevant jury instruction (CALCRIM No. 875):

> A conviction for a violation of section 245, subdivision (a)(2) requires proof that (1) a person willfully committed an act which, by its nature, probably and directly would result in the application of physical force on another person; (2) the person committing the act was aware of facts that would lead a reasonable person to realize that, as a direct, natural, and probable result of this act, physical force would be applied to another person; (3) at the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another; and (4) the assault was committed with a firearm.

*Ambriz*, 2012 WL 1183973 at *6.

The Court of Appeal found that Petitioner "mistakenly equated present ability to commit a violent injury with specific intent to injure another." *Id.* Assault with a deadly weapon requires neither "specific intent to cause injury" nor "even a subjective awareness of the risk that an injury might result from the defendant's conduct." *Id.* An actor need not do more than draw a gun into a position in which it could be used against a person within its range. *Id.* at 13. "'[W]hen an act inherently dangerous to others is committed with a conscious disregard of human life and safety, the act transcends recklessness, and the intent to commit the battery is presumed; the law cannot tolerate a deliberate and conscious disregard of human safety.'" *Id.* (quoting *People v. Lathus*, 35 Cal.App.3d 466, 470 (1973)).

The court analyzed the evidence adduced at trial and set forth their reasoning:

> The drive-by shooting here was committed around 4:00 p.m. on June 23, 2008, a Monday. There were several cars parked in front of the Valdovinos house at the time the shots were fired. It was obvious the location of the house was in a residential neighborhood. Defendants were aware people lived in the house; they believed the people who lived there had shot one of their "homies." Six shots were fired from a .357 revolver directly toward the house. Two

9

> cars in front of the house suffered direct hits. Three bullets were fired toward the north side of the house and the kitchen.
>
> Defendants committed multiple acti rei when they fired six shots at the Valdovinos residence. The bullets from the .357 revolver could have penetrated a window and injured or killed any of the people inside, contrary to Ramirez's allegation. One of the bullets penetrated the garage and nearly hit Serena E. One bullet landed in the minivan parked directly in front of the living room window. Had the bullet instead penetrated the living room window, Maria and/or her baby could have been shot. Raquel, Jose, and Jesus were in the kitchen, which had a window facing the street on which defendants' car traveled. Juan Carlos and Max were in the backyard, protected only by a chainlink fence, and could see the street in front of the house.
>
> Contrary to the claim of the defendants, the bullets were capable of, and did, penetrate the walls of the residence in that one of the bullets pierced the garage wall. A defendant who fires multiple wall-piercing bullets at a residence where he knows multiple family members reside, clearly knows that his acts will probably result in a violent injury to the occupants and it can be inferred that he intended such a result. ([*People v. Trujillo*, 181 Cal.App.4th 1344, 1354-55 (2010)].)
>
> Furthermore, defendants' contention that the number of assault charges is correlated to the number of bullets fired has been rejected multiple times by multiple courts, and we reject it here. (See, e.g., *People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690-691.)

*Ambriz*, 2012 WL 1183973 at *7-*8.

### 3. **Petitioner's Federal Claim**

In the first ground for habeas relief, Petitioner's federal habeas petition repeats his claims that he did not know that more than one person was in the Valdovinos house and that he did not have the ability to harm more than five people since he fired only five or six bullets. He argues that the state court's holding is inconsistent with the holdings of this Court but cites no case law supporting his assertion.

If Petitioner's argument is intended to challenge the state court's interpretation of California law governing assault with a deadly weapon, his claim is not cognizable in federal court. In the absence of "obvious subterfuge to evade consideration of a federal issue" (*Mullaney v. Wilbur*, 421 U.S. 684, 691 n. 11 (1975)), a determination of state law by a state appellate court is binding in a federal habeas action. *Hicks v. Feiock*, 485 U.S. 624, 629 (1988). A federal court

///

has no basis for disputing a state's interpretation of its own law. *Clemons v. Mississippi*, 494 U.S. 738, 738-39 (1990).

To the extent that Petitioner seeks simply to challenge the sufficiency of the factual evidence, the Court must deny habeas review. The state court's conclusion was neither contrary to, nor an unreasonable application of, federal constitutional law, and was based on a reasonable interpretation of the facts adduced at trial. That no occupant of the Valdovinos family was injured or killed is immaterial to Petitioner's conscious disregard of human life and safety in opening fire on the residence in the late afternoon. The state court reasonably found that Petitioner and his co-defendants had to have observed five cars parked in front of the home before they fired six shots at the home. Contrary to Petitioner's claims, the .357 caliber bullets were sufficient to penetrate the home, with one actually passing into the garage and lodging near Serena. Substantial evidence indicated that Petitioner and his co-defendants deliberately travelled to the scene, located within rival gang territory, seeking revenge for a prior shooting. In short, the state court acted reasonably in concluding that sufficient evidence supported the elements of assault with a deadly weapon.

### C. **Discharging a Firearm From a Motor Vehicle**

#### 1. **Statutory Basis**

Petitioner was convicted of one count of maliciously shooting from a motor vehicle contrary to former California Penal Code § 12034(c). That statute provided:

> Any person who willfully and maliciously discharges a firearm from a motor vehicle at another person other than an occupant of a motor vehicle is guilty of a felony punishable by imprisonment in state prison for three, five, or seven years.

Cal. Penal Code § 12034(c).

"[E]lements of a violation of section 12034, subdivision (c) are (1) acting willfully and maliciously, and (2) shooting from a motor vehicle at a person outside the vehicle. *People v. Hernandez*, 181 Cal.App. 4th 1494, 1501 (2010).

///

///

### 2. State Court Opinion

The Court of Appeal rejected Petitioner's contention that to be convicted of shooting from a motor vehicle, they had to have shot at a specific person. To shoot "at another person," a defendant only needed to shoot from the car "in such close proximity to the target that he show[ed] a conscious indifference to the probable consequence that one or more bullets will strike the target or persons in or around it." *Ambriz*, 2012 WL 1183973 at *8 (quoting *Hernandez*, 181 Cal.App.4th at 1501). The court found:

> Here, defendants willfully and maliciously discharged a firearm six times at an occupied residence, which constitutes circumstances showing a conscious disregard for the probability such a result, shooting at a person, will occur. Moreover, assault with a firearm is not a lesser included offense of shooting from a motor vehicle; hence, convictions for both crimes stand. (*People v. Licas* (2007) 41 Cal.4th 362, 370-71.)

*Ambriz*, 2012 WL 1183973 at *8.

### 3. Petitioner's Federal Claim

Sufficient evidence adduced at trial supported the contention that from inside the Honda, Petitioner and his co-defendants willfully and maliciously shot six times at persons outside the vehicle, that is, the occupants of the Valdovinos home. And, as discussed above, the state court's opinion of its own law is binding on this Court. The state court reasonably rejected Petitioner's claim that insufficient evidence supported his conviction for discharging a firearm from a motor vehicle.

## V.   The Gang Enhancement and CALCRIM No. 370

As his third ground for habeas relief, Petitioner claims that the trial court erred in failing to instruct the jury that CALCRIM No. 370 did not apply to the gang enhancement. According to Petitioner, although the instruction itself was not error, presenting it to the jury in conjunction with CALCRIM No. 1401 confused the jury because the two instructions are contradictory. The state court found this claim to be procedurally defaulted.

A district court cannot hear a federal petition for writ of habeas corpus unless the highest state court had a full and fair opportunity to hear the claim. 28 U.S.C. § 2254(a). When a state

///

prisoner has defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  An adequate rule is one that is "firmly established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)); *Bennett v. Mueller*, 322 F.3d 573, 583 (9th Cir. 2003).  An independent rule is one that is not "interwoven with federal law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  Not having addressed this issue in his petition and not having filed a traverse, Petitioner did not establish grounds for this Court to hear this issue despite the state court's determination.

The state court added that even if this claim were not procedurally defaulted, Petitioner could not prevail under applicable California law.  The court explained:

> [I]t is not reasonably likely the jury misunderstood or misapplied the instruction.  We addressed, and rejected, a similar claim in *People v. Fuentes* (2009) 171 Cal.App.4th 1133, 1139-1140.  CALCRIM No. 370 applies to the charged crimes, not to enhancements.  "In reviewing claims of instructional error, we look to whether the defendant has shown a reasonable likelihood that the jury, considering the instruction complained of in the context of the instructions as a whole and not in isolation, understood the instruction in a manner that violated his constitutional rights. [Citations.]  We interpret the instructions so as to support the judgment if they are reasonable susceptible to such interpretation, and we presume jurors can understand and correlate all instructions given.  [Citations.]" (*People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.)

*Ambriz*, 2012 WL 1183973 at *10.

This Court is bound by the state court's determination of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Generally, claims of instructional error are questions of state law and are not cognizable on federal habeas review.  "It is not the province of a federal court to reexamine state court determinations of state law questions." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).  "The fact that a jury instruction violates state law is not, by itself, a basis for federal habeas corpus relief." *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006).  "[A] petitioner may not

1  "transform a state-law issue into a federal one merely by asserting a violation of due process."
2  *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997).

3  Petitioner is not entitled to relief on his third ground.

## VI. Prosecutorial Misconduct

In his fourth ground for relief, Petitioner alleges that prosecutorial misconduct occurred when the prosecutor sought to elicit evidence from expert witness Nancy McCombs that the bullet found at the scene had been fired from the gun thrown from the Honda in violation of the court's pretrial ruling barring such testimony.

### A. Procedural and Factual Background

During motions in limine, the trial court ruled that expert witness Nancy McCombs, a senior criminalist in the Department of Justice lab in Fresno, California, could testify that markings on a bullet recovered at the Valdovinos home were consistent with having been fired from the gun that Marco threw from the Honda during Deputy Bostai's pursuit, but could not testify that the bullet was fired from the gun. 4 RT 141. In response to the prosecutor's request for clarification on the morning of McCombs' testimony, the court stated that McCombs could testify that the bullet was fired "from this gun or a gun just like this gun." 9 RT 811.

After qualifying as an expert witness, McCombs testified that she had test fired the .357 magnum revolver recovered by police after Marcus threw it out of the car window. After first comparing two test-fired bullets to determine whether the markings were consistent, she compared one of the test-fired bullets to the bullet and fragments recovered from the Valdovinos house (trial exhibit 83). Although McCombs could not compare the fragments, she concluded that the comparison between the test-fired bullet and exhibit 83 "was an identification," that is, that exhibit 83 was fired from the .357 magnum revolver provided by police. 9 RT 919:16-17, 19-20.

In his direct examination, the prosecutor made several attempts to elicit McCombs' opinion about her comparison of the recovered and test-fired bullets. Finally, the prosecutor asked:

///

> Q. Were you able to determine with regards to a reasonable degree of scientific certainty if the bullet that was submitted to you was fired from the gun that was submitted to you?
>
> A. Yes.
>
> Q. Okay. And what is your opinion based upon?
>
> A. My opinion is based upon my observations and my examinations of thousands and thousands of bullets and what I saw was better than any known non match I had ever seen.
>
> Q. Okay. What kind of marks did you, did you – were you able to tell were – strike that. What was important about these comparisons that allowed you to form that opinion[?]
>
> A. The microscopic detail was basically there was so much corresponding agreement between the two that *I had no doubt* –

9 RT 920:15- 921:3.

At that point, the attorneys for Marco and Noel Ambriz, respectively, objected, and the trial court took the matter off the record. Following an off-the-record discussion, the prosecutor moved to strike the objectionable response, and the trial court struck it. The question and response finally took the following form:

> Q. With regards to your opinion, I think I forgot it. Is it your opinion that the bullet you compared was fired from –
>
> THE COURT: Was fired from this gun or a gun with the same similar [*sic*] characteristics as this gun[?]
>
> A. They would have to be exact characteristics in my opinion.
>
> THE COURT: That's fine.

9 RT 921:12-19.

Marco Ambriz's defense attorney, Ms. Krueger, then cross-examined McCombs. After the jury was released for the midafternoon break, Krueger moved for a mistrial, based on the questions and answers stricken from the record. Petitioner's attorney and Noel Ambriz's attorney joined in the motion, arguing that after the prosecutor's missteps, striking the questions and answers could not "unring the bell." The trial court denied the motion:

> [T]he motion is denied for this reason, I ordered the testimony or answer stricken immediately, the "no doubt." I can only assume that the jury will follow the rules that I have given them and, in fact, one of the pre-instructions was that if I order testimony

15

> stricken, you are not to consider that testimony for any purpose. They will be reinstructed on that again at the conclusion of the case so your motion for a mistrial is denied.

9 RT 945:1-9.

None of the defendants objected based on prosecutorial misconduct.

### B. State Court Decision

Because neither Petitioner nor his co-defendants objected on that basis at trial, the Court of Appeal rejected their claim of prosecutorial misconduct arising from the prosecutor's eliciting testimony from McCombs in violation of the pretrial order as procedurally defaulted. "The general rule is that a defendant may not complain on appeal of prosecutorial misconduct unless, in a timely fashion, the defendant 'made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.'" *Ambriz*, 2012 WL 1183973 at *8 (quoting *People v. Samayoa*, 15 Cal.4th 795, 841 (1997)). The Court added:

> Regardless, the trial court was well within discretionary bounds when it refused to issue a curative admonition crafted by defense counsel. (See *People v. Dykes* (2009) 46 Cal.4th 731, 809.) The prosecutor had moved to strike, and the trial court struck, McCombs's statement—"[I] had no doubt"—of identification of the weapon, which is the crux of the testimony complained of by defendants. After striking the testimony, the trial court denied a request that it issue a curative instruction crafted by defense counsel on the basis that issuing the proffered instruction would create further confusion and draw attention to the matter. Furthermore, the jury was instructed with CALCRIM No. 104, which includes the statement, "If I order testimony stricken from the record, you must disregard it and must not consider that testimony for any purpose."

*Ambriz*, 2012 WL 1183973 at *8.

### C. Discussion

Because Petitioner and his codefendants failed to object to the prosecutor's questioning as constituting prosecutorial misconduct, the highest state court never had a full and fair opportunity to hear the claim. Under such circumstances, a district court cannot hear a federal petition for writ of habeas corpus. 28 U.S.C. § 2254(a). As previously discussed in ground three, when a state prisoner has defaulted on his federal claim in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner

16

can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. An adequate rule is one that is "firmly established and regularly followed." *Id.* (quoting *Ford*, 498 U.S. at 423-24); *Bennett*, 322 F.3d at 583. An independent rule is one that is not "interwoven with federal law." *Park*, 202 F.3d at 1152 (quoting *Long*, 463 U.S. at 1040-41). Because Petitioner neither addressed this issue in his petition nor filed a traverse, Petitioner did not establish any grounds for this Court to address this issue despite the state court's determination.

Because Petitioner's procedural default resulted in the state court's refusing to address this claim, the Court should not reach this issue.

## VII. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c) (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.

///

      (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

      (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court declines to issue a certificate of appealability.

**VIII. Conclusion and Recommendation**

The undersigned recommends that the Court deny the Petition for writ of habeas corpus and decline to issue a certificate of appealability.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections. The parties are advised that failure

to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 ((9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **August 1, 2016**                           /s/ *Sheila K. Oberto*
                                        UNITED STATES MAGISTRATE JUDGE